# CONTINUATION IN SUPPORT OF SEIZURE WARRANT

I, Jesse Lake, being duly sworn, depose and state the following:

## Introduction and Agent Background

1. I am a Deputy United States Marshal with the United States Marshals Service (USMS). I was duly appointed on August 10, 2011. As a Deputy United States Marshal, I am a Federal Law Enforcement Officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States. I am thereby authorized to request the issuance of a federal seizure warrant. Upon employment with the USMS, I successfully completed the Criminal Investigator Training Program and the Basic Deputy U.S. Marshal Training Course at the Federal Law Enforcement Training Center in Glynco, GA. During my employment, I have attended and completed numerous investigative training classes and seminars. I have been involved in the investigation of wanted fugitives, non-compliant sex offenders, and various other violations of Federal and State Laws. I have participated in the execution of search warrants, surveillance and undercover operations, and the arrest of subjects related to the aforementioned violations. I have also participated in the seizure of real property and other assets subject to forfeiture. I have received advanced training in investigative techniques used to investigate money laundering and Bank Secrecy Act violations and to identify assets subject to criminal and civil forfeiture through the Department of Justice – Money Laundering and Asset Recovery Section. I hold a Master of Science Degree in Criminal Justice from the University of Cincinnati. Currently, I am assigned as an Asset Forfeiture Financial Investigator for the Western District of Michigan. My responsibilities include reviewing financial records and identifying and seizing assets procured through illegitimate means or that are otherwise subject to forfeiture.

2. I make this affidavit in support of a warrant to seize the following funds: $93,654.12 and $11,491.19 totaling $105,145.31 collectively referred to as the "Subject Currency" which are subject to forfeiture pursuant to 21 U.S.C. § 853(a)(1) and 21 U.S.C. § 881(a)(6). The funds were, respectively, seized by New York Police Department on June 16, 2016 and August 11, 2016. The funds are presently deposited in a JP Morgan Chase account in custody of the NYPD in Brooklyn, NY.

3. This warrant request is connected with the ongoing narcotics investigation in the Western District of Michigan of Christopher MAY-SHAW.

4. The information contained in this affidavit is based on my own experience, investigation, and observations, as well as information relayed to me by others with knowledge of the investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of an Application for Seizure Warrant, I have not included every detail that I have learned over the course of this investigation.

5. Based on the information set forth below, I respectfully submit that there is probable cause to believe that the funds seized during the arrest of MAY-SHAW on June 16, 2016 and August 11, 2106 are proceeds of an ongoing narcotics distribution conspiracy in violation of 21 U.S.C. §§ 846 and 841(a)(1).

**Probable Cause**

6. In 2016, law enforcement began investigating MAY-SHAW for drug trafficking. Grand Rapids Police Department-Vice Unit obtained a search warrant for an address associated with MAY-SHAW, 4346 Norman Drive SE #104, Grand Rapids, MI, and executed it on February 18, 2016. This residence belonged to Rosheedah HEATH. Prior to obtaining and executing a search warrant at the above address, law enforcement observed MAY-SHAW routinely coming

2

and going at all hours from the residence. A 2003 BMW bearing Michigan registration DLB8310 belonging to MAY-SHAW was located at that residence. Between HEATH's residence and vehicle, law enforcement located 1,079 grams of cocaine, 32 grams of heroin, and $201,337 in cash. Inside the residence's kitchen, law enforcement also located items necessary to process, package, and distribute various amounts of narcotics. Of the $201,337 seized, $187,323 of that amount was located within a backpack inside MAY-SHAW's vehicle along with a bag containing the cocaine and heroin. MAY-SHAW was not located at the residence during the search warrant.

7. Following the execution of the search warrant, state law enforcement obtained an arrest warrant on February 20, 2016 for MAY-SHAW for possession and distribution of narcotics. This warrant was for statewide extradition only. This warrant was later amended to a Governor's warrant on or about August 24, 2016, which provided for extradition outside the State of Michigan.

8. While MAY-SHAW was a fugitive from his charges in the Grand Rapids, on or about June 15, 2016, MAY-SHAW, along with passenger Patricia Morris, was stopped and approached by New York Police Department within a 2011 Porsche Panamera with temporary tag 49J7643 from the State of Texas. This traffic stop occurred at the location of Avenue D and 31st Street, Brooklyn, NY. Law enforcement records checks discovered the tag was a forgery. MAY-SHAW presented documents with the alias of Robert G. HOGAN. A Diamondback FS 9 firearm, serial number FB1323, was located under the driver's seat. Also located within the vehicle was a plastic bag containing a green leafy substance. The substance was field-tested and determined to be marijuana. The NYPD also identified and seized approximately $93,654.12 in currency from the vehicle. The marijuana and currency were placed into evidence by NYPD. Law enforcement at this time performed an NCIC check and determined that MAY-SHAW was wanted out of the State of Michigan for narcotics. However, the warrant at the time was not extraditable from New

York.  Following this arrest, MAY-SHAW was released from custody pending the outcome of his New York charges.

9. On or about August 10, 2016, as a result of an NYPD investigation, officers of the NYPD observed MAY-SHAW place a backpack in a 2015 Jeep Grand Cherokee, registration number CDZ8735, belonging to Enterprise Rental Car Company in the parking lot of a Holiday Inn Express in Brooklyn, NY.  At approximately 3:20 p.m., MAY-SHAW was placed under arrest by the NYPD.  Subsequent to MAY-SHAW's arrest, a search was conducted of his person and vehicle.  Located on MAY-SHAW's person was approximately $4,995 in U.S. currency.  Located within the backpack were substances appearing to be cocaine and marijuana.  Additionally $5,495 in U.S. currency was in MAY-SHAW's backpack.  In total law enforcement seized $11419.19 from the hotel, backpack, and MAY-SHAW's person.  Law enforcement also located two fake driver's licenses for MAY-SHAW within the backpack.  One was a Washington state driver's license with the name Ronaldo Salazar Pena containing MAY-SHAW's photo.  The other was a South Carolina driver's license with the name Robert Hogan containing MAY-SHAW's photo. MAY-SHAW gave consent to enter the hotel room he was occupying.  Law enforcement located inside the hotel room ziplock bags, scales, and substances believed to be heroin (11.8 ounces), cocaine (5 grams) and a small quantity of marijuana.  MAY-SHAW made a written statement taking full responsibility for the possession of all recovered items.  MAY-SHAW was booked into Riker's Island Correctional Facility in Riker's Island, NY, after his arrest on charges of possession with intent to distribute.  MAY-SHAW additionally faced charges in the State of New York for possession of a firearm by a convicted felon and possession of forged government documents.

10. Meanwhile the United States adopted MAY-SHAW's prosecution in the Western District of Michigan.  On February 22, 2017, a federal grand jury in the Western District of

Michigan returned a four-count indictment against MAY-SHAW and ROSHEEDAH JULIMA HEATH. Count One charged MAY-SHAW and HEATH with conspiracy to distribute and possess with intent to distribute cocaine and heroin from in or about January 1, 2016 through and including February 18, 2016. Counts Two and Three respectively charged MAY-SHAW and HEATH with possession with intent to distribute cocaine on or about February 18, 2016. Count Four charged MAY-SHAW and HEATH with possession with intent to distribute cocaine on or about February 18, 2016. Counts Two through Four were the result of Grand Rapids Police Department – Vice Unit's search of 4346 Norman Drive SE #104, Grand Rapids, MI.

11. While in custody at Riker's Island Correctional Facility, MAY-SHAW made numerous phone calls, which were recorded by the correctional facility. DEA Task Force Officer Jon Schafer learned that MAY-SHAW was placing phone calls from Riker's Island Correctional Facility to individuals located in the Grand Rapids area. Law enforcement issued a subpoena to Riker's Island Correctional Facility for copies of these phone calls. Digital recordings of these phone calls were produced.

12. TFO Schafer and I analyzed these phone calls. Analysis of these phone calls showed that during a number of the calls, MAY-SHAW instructed his girlfriend, Tammy MINGO, how to process and distribute heroin. MINGO resides in Grand Rapids, MI. During a phone call to MINGO, MAY-SHAW instructed MINGO on how to use a coffee grinder and meat grinder to process the narcotic. MAY-SHAW informed MINGO to let a third party know that "their best friend" is still located in the basement but it will be too heavy for MINGO to move. MAY-SHAW instructed MINGO to ensure that there were no big pieces and to use a meat tenderizer prior to placing the substance in a coffee grinder. MINGO informed MAY-SHAW that she gave a "key" [i.e. a kilo] to an individual. After hearing this MAY-SHAW corrected her usage of the term,

5

calling it a "tenth." As a result of these phone calls, law enforcement officers were able to make controlled purchases of heroin from MINGO in Grand Rapids while MAY-SHAW was incarcerated in New York.

13. Based on the foregoing, I believe that the currency seized by NYPD in June 2016 and August 2016 constitutes the proceeds of a narcotics distribution conspiracy involving MAY-SHAW, MINGO, and others that involves the Western District of Michigan.

### **Applicable Forfeiture Law**

14. I am advised that 21 U.S.C. § 853(a)(1) provides for the criminal forfeiture of any proceeds a person obtained, directly or indirectly from drug trafficking in violation of 21 U.S.C. § 841(a)(1) or 21 U.S.C. § 846. Title 21 U.S.C. § 853(a)(2) further provides for the criminal forfeiture of any of a person's property used, or intended to be used, in any manner or part to facilitate drug trafficking in violation of federal law. I am further advised that 21 U.S.C. § 853(f) provides for the issuance of a seizure warrant if the Court determines that a restraining order under 21 U.S.C. § 853(e) would be insufficient to ensure the availability of the currency in the event of MAY-SHAW's conviction. I submit that a restraining order under 21 U.S.C. § 853(e) would be insufficient because NYPD has advised me that MAY-SHAW's mother is seeking to take possession of the funds. MAY-SHAW has been indicted in the Western District of Michigan and has been transported from New York to await trial here. As a result of the extradition, New York has advised that the funds will be released unless a seizure warrant is produced. The state case against MAY-SHAW has since been dismissed. I am further advised that 21 U.S.C. § 853(l) gives district courts jurisdiction to enter orders and grant seizure warrants without regard to the location of any property which may be subject to forfeiture under 21 U.S.C. § 853.

15. I am also advised that 21 U.S.C. § 881(a)(6) provides for the civil forfeiture of any money furnished or intended to be furnished by any person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all money used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1) or 21 U.S.C. § 846. I am further advised that 21 U.S.C. § 881(b) authorizes the issuance of a seizure warrant in the manner set forth in 18 U.S.C. § 981(b). Pursuant to 18 U.S.C. § 981(b), a seizure warrant may be issued by a judicial officer in any district in which a forfeiture action against the property may be filed under 28 U.S.C. § 1355(b) and may be executed in any district in which the property is found. Pursuant to 28 U.S.C. § 1355(b)(1)(A), a forfeiture action may be brought in the district court for any district in which any of the acts or omissions giving rise to the forfeiture occurred. Based on the foregoing, I submit that the seized currency I am requesting authority to seize constitutes the proceeds of an ongoing narcotics conspiracy between MAY-SHAW and MINGUS and others that involves the Western District of Michigan. Furthermore, 28 U.S.C. § 1355(b)(1)(B) allows a forfeiture action to be brought where venue is proper under 28 U.S.C. § 1395. Under 28 U.S.C. § 1395(c), a civil forfeiture proceeding for the forfeiture of property seized outside any judicial district may be prosecuted in any district into which the property is brought.

## Conclusion

16. There is probable cause to believe that the Subject Currency constitutes the proceeds of drug trafficking or has facilitated drug trafficking and is subject to criminal forfeiture pursuant to 21 U.S.C. §§ 853(a)(1) and (a)(2) and is subject to civil forfeiture pursuant to 21 U.S.C. § 881(a)(6). Accordingly, I request a warrant to seize the subject currency pursuant to 21 U.S.C. § 853(f) and 21 U.S.C. § 881(b).